# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
ERIK KOONCE,

        Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

        Respondent.
* * * * * * * * * * * * * * * * * * * *

No. 21-1560V

Special Master Christian J. Moran

Filed: July 8, 2024

Laura J. Levenberg, Muller Brazil, Dresher, PA, for petitioner;
Sarah B. Rifkin, United States Dep't of Justice, Washington, DC, for respondent.

### DECISION AWARDING COMPENSATION[1]

Erik Koonce established that an influenza ("flu") vaccine caused him to develop two different conditions, Guillain-Barré syndrome and Bell's palsy. The parties dispute the amount of compensation to which Mr. Koonce is entitled. For the reasons explained below, a reasonable amount of compensation is **$107,614.03**.

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

I.   **Events in Mr. Koonce's Life**[2]

In October 2018, Mr. Koonce was 50 years old. His medical history does not contribute to resolving his claim for compensation. He was employed as a pilot. See Exhibit 3 at 57. He received a flu vaccine on October 17, 2018. Exhibit 1.

On November 8, 2018, Mr. Koonce reported that he had numbness in his face and left facial droop, starting one day earlier. Exhibit 3 at 57. The doctor in the emergency room diagnosed Mr. Koonce as suffering from Bell's palsy. He was prescribed a tapered (12-day) course of prednisone. Id. at 60.

In a follow-up with his primary care doctor (Christine Dacier), Mr. Koonce essentially repeated this history. Exhibit 2 at 33 (Nov. 14, 2018). Mr. Koonce stated that the "left side of his face 'felt frozen.'" Id. Dr. Dacier also diagnosed Bell's palsy and recommended another appointment in a week. Id.

In the return appointment, Mr. Koonce told Dr. Dacier that he "continued to improve." Exhibit 2 at 31 (Nov. 20, 2018). Movement in his face was increased. Dr. Dacier stated that Mr. Koonce is "medically stable to return to work as a pilot." Id.

On about November 23, 2018, Mr. Koonce developed numbness and weakness in his feet and ascending his legs for which he sought treatment in an emergency room on November 30, 2018. Exhibit 4 at 29. He stated the weakness started after he completed his course of steroids. A physical examination, however, did not detect any weakness in his lower extremities. Yet, Mr. Koonce had decreased sensation from his feet to his mid-shins. Id. at 30. Mr. Koonce was admitted to the hospital.

---

[2] Mr. Koonce's medical history is presented relatively summarily. For a more complete account, see Resp't's Second Am. Report, filed Mar. 24, 2023, at 3-10, and Pet'r's Mot. for a Ruling on the Record, filed July 17, 2023, at 2-4.

2

Mr. Koonce remained in the hospital for four days.  A neurologist, John Khoury, examined Mr. Koonce.  Dr. Khoury stated "Hopefully this is just a steroid induced Neuropathy but given the recent [Bell's] palsy it is possible this is a Miller Fisher Variant of GBS."  Exhibit 4 at 444.  Dr. Khoury recommended that if Mr. Koonce's symptoms worsened or if he lost his ankle reflexes, Mr. Koonce should have a lumbar puncture.

Whether Mr. Koonce's symptoms did worsen, or he lost his ankle reflexes is not clear.  Regardless, Mr. Koonce underwent a lumbar puncture on December 1, 2018.  The results showed an elevated protein level without an elevated blood count.  Exhibit 4 at 108.  Doctors interpreted these results as "consistent with GBS."  Id. at 10, 250, 311.  Mr. Koonce continued to report that he felt weak, although the examination did not detect weakness or a loss of reflexes.  Id. at 10.  The doctors ordered intravenous immunoglobulin therapy ("IVIG") and Mr. Koonce had four sessions while in the hospital.  After four days of IVIG, Mr. Koonce's symptoms improved.

At discharge, Mr. Koonce's diagnosis was GBS with Miller Fisher variant.  Exhibit 4 at 10-12 (Dec. 4, 2018 discharge report).  He was instructed to follow-up with his primary care physician.

Mr. Koonce returned to Dr. Dacier and reported his recent diagnosis of GBS.  Mr. Koonce also described new symptoms, including fever, chills, fatigue.  Exhibit 2 at 28 (Dec. 20, 2018).  Mr. Koonce also reported continued numbness from the knees down.

Next, Mr. Koonce saw a neurologist, Richard Buckler.  Dr. Buckler stated Mr. Koonce's "symptoms and examination [were] suggestive of Guillain-Barré syndrome in view of the paresthesias, [left-sided] facial droop and depressed deep tendon reflexes in the upper extremities and an elevated CSF protein of 210."  Exhibit 31 at 8 (Dec. 26, 2018).  Although Dr. Buckler recommended more studies (an EMG/NCS and an MRI of the cervical spine), it appears that Mr. Koonce did not undergo this workup.

In a January 3, 2019 appointment with Dr. Dacier, Mr. Koonce reported that the numbness in his feet was "a little better."  Exhibit 2 at 22.  He also said that he

3

had exercised in a gym the previous day.  Dr. Dacier stated that his gait was normal.

Mr. Koonce returned to see the neurologist who had cared for him in the hospital, Dr. Khoury, on January 7, 2019.  Exhibit 5 at 9.  Dr. Khoury memorialized Mr. Koonce's previous complaints and hospitalization.  Dr. Khoury noted that after IVIG treatment, Mr. Koonce's bilateral leg numbness had improved.  Mr. Koonce denied any weakness and reported some numbness in his toes.  Mr. Koonce walked normally and could stand on either foot without difficulty.  Dr. Khoury assessed Mr. Koonce with "post viral GBS."  Id. at 10.  Dr. Khoury stated that because Mr. Koonce was "doing great," "no additional therapy [was] needed at this time."  Id.  Dr. Khoury cleared Mr. Koonce "to work without restriction."  Id.[3]

In April 2019, Mr. Koonce saw both his neurologist (Dr. Khoury) and his primary care doctor (Dr. Dacier).  He was not having neurologic problems.  See Exhibit 5 at 7, Exhibit 2 at 20.  But, in May 2019, Mr. Koonce told his other neurologist, Dr. Buckler, that his numbness had worsened over the past month.  Exhibit 31 at 12.

Mr. Koonce sought another opinion regarding his neurologic problems from Eric Lancaster at Penn Medicine on June 21, 2019.  Exhibit 6 at 11.  Dr. Lancaster obtained a history from Mr. Koonce, in which Mr. Koonce informed Dr. Lancaster he had ascending numbness but "Never became weak" and "Still had reflexes."  Id. at 12.  In the first hospitalization, Mr. Koonce had a high protein.  Apparently, Mr. Koonce was unclear about the diagnosis "Miller Fisher vs. GBS."  Id.

Through electronic medical records, Dr. Lancaster reviewed various documents, including the "Abington hospital admission records.  Discharge diagnosis was GBS" and Dr. Khoury's notes from January 7, 2019 and April 1, 2019 in which Dr. Khoury diagnosed GBS.  Exhibit 6 at 13.

---

[3] Mr. Koonce asserts that he missed five months of work without identifying any evidence to support this statement.  Pet'r's Br. at 7; Pet'r's Reply at 2.

4

For current problems, Mr. Koonce stated that "his feet are still tingling and numb and he feels it up to his knees. No convincing symptoms in hands. Face never became weak since the first attack of Bell's Palsy."  Exhibit 6 at 18.

Dr. Lancaster's impression was that: "Mr. Koonce has bell's palsy and then had an acute neuropathy. Since there was an LP showing high protein and normal CSF cell counts, it is hard to come up with any different cause tha[n] GBS for his symptoms. It does seem like he had a limited form of GBS with much less disability that is usual for GBS." Exhibit 6 at 19.  Dr. Lancaster did not recommend any additional immune therapy.  Dr. Lancaster recommended some tests for other causes of neuropathy.

After some intervening medical appointments, Mr. Koonce visited with Dr. Lancaster via telemedicine on February 12, 2021.  Exhibit 6 at 17.  A primary purpose was to discuss vaccinations, particularly the Covid-19 vaccination.  Dr. Lancaster wrote: "I would probably avoid a repeat flu shot but would not avoid other vaccines."  Id. at 19-20.  Mr. Koonce reported that he had ongoing numbness from his feet to his knees. Id. at 17.  Yet, Mr. Koonce could also sprint around the court when he played racquetball.  Id.

The parties have not identified other medical records contributing to determining whether Mr. Koonce is entitled to compensation.  See Pet'r's Mot., filed May 13, 2024 at 4 (concluding with Dr. Lancaster's Feb. 12, 2021 visit); Resp't's Resp., filed June 14, 2024 at 12 (same).

## II.     Procedural History

Mr. Koonce began this case by submitting his petition on July 9, 2021. During the summer of 2022, the parties attempted to resolve the case but were not successful.  Pet'r's Status Rep., filed Aug. 5, 2022.

Mr. Koonce was found to be entitled to compensation. Ruling, issued Jan. 3, 2024. The parties were not able to resolve the amount of compensation for pain and suffering.[4]

Mr. Koonce proposed that a reasonable amount of pain and suffering is $160,000 for Guillain-Barré syndrome and $60,000 for Bell's Palsy. Pet'r's Mot.., filed May 13, 2024 at 10. In contrast, the Secretary proposed a "holistic" amount of compensation for pain and suffering is $70,000. Resp't's Resp., filed June 13, 2024, at 2.[5] Mr. Koonce defended his proposal. Pet'r's Reply, filed June 20, 2024. With the submission of the reply, the case is ready for adjudication.

## III. Standards for Adjudication

A petitioner is required to establish his case by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is

---

[4] The parties agree that $10,494.43 was a reasonable amount of compensation for lost earnings. The parties' cooperation in resolving this component is appreciated.

[5] To support his position of proposing a single amount of compensation for two different conditions, the Secretary cited Pappas v. Sec'y of Health & Hum. Servs., No. 21-1690V, 2023 WL 7298437 (Fed. Cl. Spec. Mstr. Oct. 6, 2003), and Miller v. Sec'y of Health & Hum. Servs., No. 21-1559V, 2023 WL 2474322 (Fed. Cl. Spec. Mstr. Mar. 13, 2023). Resp't's Resp. at 13 n.7. The relevance of Pappas and Miller for this proposition is not readily apparent. In both cases, the chief special master determined the amount of compensation for Guillain-Barré syndrome and the decisions do not suggest that the petitioners were suffering from conditions other than Guillain-Barré syndrome.

6

too high.  Andreu v. Sec'y of Health & Hum. Servs., 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing a special master's decision that petitioners were not entitled to compensation); see also Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357 (Fed. Cir. 2000); Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with the dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

The Vaccine Act states that compensation shall include "For actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." 42 U.S.C. § 300aa–15(a)(4).  Factors relevant to this element of compensation are "[(1)] the ability to understand the injury, i.e., the injured's mental faculties are intact; [(2)] the degree of severity of the injury; and [(3)] the potential number of years the individual is subjected to the injury." McAllister v. Sec'y of Health & Human Servs., No. 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), vacated and remanded on other grounds, 70 F.3d 1240 (Fed. Cir. 1995).

## IV.     Analysis Part One – Compensation for Guillain-Barré Syndrome

Mr. Koonce recognizes that his "condition was on the mild end of severity in GBS cases." Pet'r's Br. at 7; accord Resp't's Resp. at 9.  Several factors contribute to a characterization of mildness.  For example, Mr. Koonce's hospitalization was relatively short (four-days).  Because he improved so rapidly, Mr. Koonce was not required to stay in the hospital to receive his fifth (and final) IVIG treatment.  During the hospitalization, his treating doctors did not detect any weakness.  He also did not have trouble with walking or respirating, two difficulties that often accompany Guillain-Barré syndrome.

Mr. Koonce's improvement during his hospitalization allowed him to be discharged home, as opposed to a rehabilitation facility.  Rehabilitation was not required because, in part, Mr. Koonce was independent in bathing, dressing, walking, and climbing stairs.  Exhibit 4 at 17.  After leaving the hospital, he did not attend physical therapy.

The January 7, 2019 record from Dr. Khoury states that Mr. Koonce was "doing great" and "no additional therapy needed." Exhibit 5 at 9.  This medical

record, which was created approximately one month after Mr. Koonce was hospitalized, shows that Mr. Koonce's Guillain-Barré syndrome did not last long. Any residual symptoms, such as the numbness reported to Dr. Lancaster in February 2021, did not interfere with physical activities such as playing racquetball.

The duration and intensity of pain and suffering affect the amount of compensation for the pain and suffering. Fortunately for Mr. Koonce, the duration was relatively short and the intensity was mild. Accordingly, a reasonable amount of pain and suffering for Mr. Koonce's pain and suffering is $70,000.

## V.   Analysis Part Two – Compensation for Bell's Palsy

Both parties agree that the only reasoned decision awarding pain and suffering to a vaccinee who suffered Bell's palsy is Sturdevant v. Sec'y of Health & Hum. Servs., No. 17-172V, 2024 WL 1045145 (Fed. Cl. Spec. Mstr. Feb. 12, 2024), mot. for rev. denied, 2024 WL 2755121 (Fed. Cl. May 3, 2024). See Pet'r's Br. at 8; Resp't's Resp. at 15. However, Sturdevant tends to show an upper bound as Mr. Koonce concedes that he had "a more mild case of Bell's palsy than the petitioner in Sturdevant." Pet'r's Br. at 9; accord Resp't's Resp. at 15.

The acute portion of Mr. Koonce's Bell's palsy was relatively short. After receiving the flu vaccination on October 17, 2018, Mr. Koonce developed numbness in his face and left facial droop, starting November 7, 2018. Exhibit 3 at 57. Approximately two weeks later, after a course of medication, Mr. Koonce's symptoms were significantly improved. Id. at 31 (Nov. 20, 2018). During the treatment for Guillain-Barré syndrome, Dr. Khoury stated Mr. Koonce's "Bell['s] palsy is gone." Exhibit 5 at 7 (April 1, 2019).

Under this chronology, the Secretary had a fair argument that Mr. Koonce was not entitled to compensation for the Bell's palsy because it did not last longer than six months. See 42 U.S.C. § 300aa–11(c)(1)(D). However, on June 21, 2019, Dr. Lancaster detected "subtle synkinesis" on the left side of Mr. Koonce's face upon examination. Exhibit 6 at 12. Dr. Lancaster's observation stands in contrast with Mr. Koonce's own experience as he informed Dr. Lancaster that he (Mr. Koonce) could "not see any difference" in his face. Id.

8

Mr. Koonce lack of complaint to Dr. Lancaster about a distortion in his face is a foundation for the Secretary's argument that the compensation should be reduced due to Mr. Koonce's lack of awareness any distortion. Resp't's Resp. at 12-13. Mr. Koonce appears to overlook this argument. See Pet'r's Reply at 2 (asserting that the Secretary "seems to not give any thoughts on the pain and suffering award for Petitioner's Bell's palsy diagnosis").

Under these circumstances, an appropriate amount of compensation for Mr. Koonce's pain and suffering due to his Bell's palsy is $27,000.

## VI.  **Additional Undisputed Items and Summary**

Besides seeking compensation for pain and suffering, Mr. Koonce seeks compensation for his lost earnings and for unreimbursed expenses. The parties agreed to compensation in the amount of $10,494.43 for lost earnings and $119.60 for out-of-pocket medical expenses.

Accordingly, Mr. Koonce is awarded the following:

| Item | Amount |
| --- | ---: |
| Compensation for pain and suffering associated with Guillain-Barré syndrome: | $70,000.00 |
| Compensation for pain and suffering associated with Bell's palsy | $27,000.00 |
| Lost earnings | $10,494.43 |
| Unreimbursed expenses | $119.60 |
| TOTAL | $107,614.03 |

## VII. <u>Conclusion</u>

Mr. Koonce previously established that he is entitled to compensation. The evidence shows that a reasonable amount of compensation is $107,614.03.

This amount shall be payable in a lump sum in the form of a check payable to petitioner. This amount constitutes compensation for all items listed in 42 U.S.C. § 300aa–15(a).

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, which are available on the website for the Court of Federal Claims.

**IT IS SO ORDERED.**

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master
